JOAB HOLLAND and IRA CUTTER *vs.* ORRA OSGOOD.

In case of the absence merely of a justice of the peace, before whom a writ is made returnable, any other justice of the peace present, who can judge between the parties in the case. may take jurisdiction of the cause for the purpose of determining the question of continuance.

This question he shall determine upon the sufficiency of the reason for the absence, but he is himself the sole judge of the question, and his adjudication is final.

The second proviso of the act giving this authority, which requires that the second justice shall "enter on the files the reasons" for the continuance, referring as it does to the expression in the body of the act, "by reason of sickness or other cause," would seem to have intended that the justice should enter the "*reason* of the absence," as far as they were known to him.

But in a case where they were not, and could not be certainly known to him, except from inference and presumption, he is not bound to state the presumption or inference in his record, but may state the absence generally and the inference being implied, it is the same as if it were expressed.

This part of the act being merely advisory to the justice as to the mode of keeping the record of the proceedings, if it be not strictly complied with, it does not avoid the proceedings.

Distinction between those provisions of a statute which affect the *validity* of proceedings, if disregarded, and those which do not.

A person, who under color of a license, takes property for another purpose, or who takes property after the license is recalled, is liable in trover. And it makes no difference that the plaintiff might have elected to hold it as a sale and delivery to a third person, instead of a conversion by the defendant.

This action being originally sued before a justice of the peace, on the return day of the writ the subscribing magistrate being absent, another magistrate continued the cause, under the statute of 1832. The continuance was entered upon the files in these words: "Townshend, January 29th, 1835. The signing magistrate being absent, I continue this cause till the 28th day of February next," &c., signed W. R. Shafter, Justice Peace. This was urged as a matter in abatement before the magistrate, and in the county court; but the plea being overruled, the question comes here for revision.

The cause then proceeded to trial before the jury.

The plaintiffs produced testimony tending to prove that they were owners of a brick-kiln in Townshend, and sold at their kiln 6000 bricks to one David Johnson of Fayetteville, who contracted with the defendant to draw said bricks for him, and directed the plaintiffs to deliver the same to him. The defendant drew, at different times to Johnson, 5500 of the bricks, and when he took the last of those, he suggested to Holland he should not wish to come

WINDHAM,
*February*,
1836.

Holland *et al.*
*vs.*
Osgood.

again for so few as 500—Holland told him he should insist on Johnson's taking his whole 6000, and defendant could come and get them when plaintiffs were not there; and directed what part of the kiln to take them from. When defendant arrived at Johnson's, he suggested the same to him, who told him he did not want the 500 to use. Defendant then repeated what Holland had said, aforesaid—whereupon Johnson told him if plaintiffs insisted on his taking the remaining 500, he must draw them. Soon after this, the plaintiff, Cutter, saw Johnson at Fayetteville, and they agreed Johnson need not take the remaining 500; but of this, it did not appear that defendant was informed.

It further appeared, that defendant resided in Brookline, and he went to the kiln in the absence of the plaintiffs, and took 500 bricks: On his return he met with the plaintiff, Holland, who asked him from what part of the kiln he got the brick?—The defendant replied, from the part he directed: to which he replied, it was well. The defendant informed him how many he had, and Holland said he was satisfied—it was right. The defendant then informed Holland he must get to the Flats (meaning Fayetteville, where Johnson resided,) before noon, as the brick were wanted. He did not however go to Fayetteville, but took another road, and carried the brick to Brookline, and converted them to his own use; and he afterwards told Johnson he would pay him. It did not very distinctly appear whether defendant took those brick before or after Cutter and Johnson agreed to abandon so much of their contract.

The defendant requested the court to charge the jury, that if they believed a contract existed for the brick between plaintiffs and Johnson, and for the drawing between Johnson and defendant, the plaintiff taking the brick was not tortious, and the present action could not be sustained. The defendant also requested the court to charge that the acts and declarations of Holland, when he met the defendant, ought to be considered as a fair ground of inference that the taking of the bricks was not tortious, and if so, the plaintiffs were not entitled to recover.

The court declined so to charge, but did charge the jury, that if the jury found defendant was employed by Johnson to take and transport 6000 brick, and was directed by the plaintiffs to take the remaining 500, even in their absence, and what part of the kiln to take them from, the plaintiffs cannot maintain this action against the defendant for so taking for and carrying to Johnson, though Cutter had in the mean time abandoned the contract with Johnson

WINDHAM,
February,
1836.

Holland *et al.*
*vs.*
Osgood .

unless the defendant had been informed thereof, or his authority had been countermanded.

The defendant having been authorized by Johnson to take and transport the brick to him, and by the plaintiffs to take said brick *for Johnson,* even in their absence, and transport them to him, did not authorize him, without the consent either of plaintiffs or Johnson, to take brick for *himself* and carry them to Brookline.   If the defendant did so, the jury will find for the plaintiffs.

As to the conversation with Holland when he saw defendant on the way with the brick, and when told by defendant he was going with them to the Flats, (where Johnson lived,) and made no objections, it might have arisen from supposing the brick were going to Johnson, or it might be owing to his having previously agreed with defendant to take the brick on his own account.   If the former, it does not relieve the defendant—if the latter, it constitutes a good defence.

To this charge, the defendant excepted.

*R. M. Field for defendants.*—I. The first exception is to the decision overruling the plea in abatement.

The writ was returnable on the 29th January, 1835, before justice Howard.   Justice Shafter continued till 25th February, and entered his reasons on the writ as follows :   " Townshend, January 29, 1835.   The signing magistrate *being absent,* 1 continue this cause to the 25th day of February next, at one o'clock of said day, and at the same place.   W. R. Shafter, Jus. Peace."

The defendant, under his plea in abatement, contends that this was no good continuance under the act of 1832.—(See Acts of 1832, p. —.)

1, The act requires, in its second proviso, that the reasons should be entered on the files.   If no reasons, or insufficient reasons are entered, the continuance goes for nothing.

2. The only reasons that will authorize a continuance are, "sickness or other cause rendering the magistrate *unable* to attend."

3. But the reason assigned by Shafter is, that Howard was *absent,* or in other words, did *not attend.*

II. The second exception arose on trial of the merits.

The case states in substance, that David Johnson bought 6000 bricks of the plaintiffs, and employed the defendant to draw them from the kiln.—The defendant drew them away, and converted 500 to his own use.

The defendant contends that this gave no right of action. The bricks, immediately upon being taken from the kiln by the defendant, the servant of Johnson, became the property of Johnson, and for a subsequent conversion he alone could sue.

Such is the rule as to common carriers. For a subsequent conversion, the writ must be in the name of the consignee, and *not* in the name of the consignor.—See Chit. Cont. 151, *Dawes* vs. *Peck,* 8 T. R. 330, &c. &c. &c.

*John Roberts, contra.*

The opinion of the court was delivered by

REDFIELD, J.—The question of the sufficiency of the plea in abatement arises on the construction of the second proviso of the act of 1832, giving one magistrate authority to continue a cause returnable before another, in case of his absence, "by reason of sickness or other cause." The proviso is, that the justice shall enter on the files "the reasons therefor," at the time of such continuance. The terms used in the statute to define the occasion when the second magistrate shall have authority to assume jurisdiction of a cause not returnable before himself, imply clearly, on any rational construction, that he shall do it on finding the justice before whom the writ was made returnable *absent*. There must be some definite tangible point, which shall transfer the jurisdiction of the cause from one tribunal to another, and this can be nothing but simply the absence of the first magistrate. In that case, it is the duty of any other justice of the peace present, *to take cognizance of the cause.* It will not do to say that he must inquire into the reason of the absence before he takes jurisdiction of the cause, for this will involve the absurdity that he will be adjudicating a cause of which has never yet obtained or assumed jurisdiction. The right of *primary* jurisdiction is never made to depend upon the mere judgment or discretion of the tribunal, but always rests upon some definable criterion, equally apparent to all. In this case, it is most evidently "the absence of the justice before whom the writ is made returnable," which gives any other justice present jurisdiction of the cause for the mere purpose of determining the question of continuance.

If the subscribing justice be absent, and another justice take cognizance of the cause for the purpose of determining the question of continuance, his judgment upon that question, like that of any other tribunal upon a question of continuance, is final and conclusive,

WINDHAM,
February,
1836.
Holland et al.
vs.
Osgood.

and not subject to be reconsidered and reversed by any other tribunal. These questions always rest in the discretion of courts, and as such, are never grounds of error or subject to revision. It is made the duty of the justice in such case to inquire into the "reasons of the absence" of the first justice. What shall be a *sufficient reason* for the absence, to justify a continuance, is no where defined, except "sickness or other cause." By this of course is intended "other reasonable cause;" but the second magistrate, *after* taking jurisdiction of the cause, is to judge of the reasonableness of the cause; and he will of course determine this question in his own way, upon such testimony as he may see fit to require. He may consider stress of weather, sickness of one's family, absence on a journey sufficient or insufficient reasons for a continuance of the cause, but his determination is final. And we do not apprehend any great injustice is likely to arise from such a construction. If the justice be absent, it is presumable he is absent for some good reason, and should be so taken, unless the contrary is made to appear, or at least some suspicion of that character raised. It is not supposable that in every case the precise reason of the absence can be known. In case of absence on a journey, it will evidently be impossible to know more than that the first justice is absent on a journey, and this is nothing more than "absence" simply. Indeed absence is all that the magistrate can require in practice to be *proved*; and from this and the attending circumstances, he determines whether the absence is for reasonable cause, or in the words of the act, for *any cause*, or *without cause*. If the former, the cause should be continued—if the latter, it should not. If the cause is ordered to be continued, this shows that the second justice judged the absence of the subscribing justice was for cause, and his determination being final, it cannot be made the subject matter of a plea in abatement.

But, it is argued that as the second proviso requires the justice to enter those reasons of absence, the whole proceeding is void unless this is done. That proviso evidently was intended only to direct the mode of keeping the record of this anomalous proceeding. If the justice failed to comply with the requirements of a statute merely *directory* as to the *mode* of proceedings, or preserving his records, it was never held that the *proceedings* become *ipso facto* void. Statutes directing the mode of proceedings by public officers, have always been treated as *advisory*, and not intended to invalidate the vitality of the proceedings themselves, unless expressly so provided. And although the statute evidently intended that the

WINDHAM,
February.
1836.
Holland et al.
vs.
Osgood.

second magistrate should enter the *reasons* of the absence upon the files, yet it could not have been expected he could perform impossibilities. He could only be expected to be as definite in the statement of reasons as facts within his knowledge would warrant. In a case where no certain evidence of the *reasons* of absence could be had, and it was left to presumption, as above stated, it could not be very material that the second justice should *state* " he presumed the absence to be from some good cause ;" for this would be fully *implied* in the fact of his continuing the cause for *the absence.* This then being a necessary implication from the words used, and the act done by the justice, it is in effect expressed or " entered upon the files."

And in proceedings of this character, too much precision ought not to be required. The maxim, *qui hæret in iltera hæret in cortice,* applies here with great force. For both reasons then we think the plea in abatement was well held to be insufficient. If the second justice had been " one who could not judge between the parties," or the first magistrate had been present, while another continued his cause, these things would have rendered the proceedings in the first case voidable by plea in abatement, and in the second case void as a discontinuance of the action.

The question raised in regard to the charge of the court is clearly with the plaintiff. The defendant having taken the brick after plaintiffs and Johnson had rescinded their contract, although this was not known to both plaintiffs, it could not in any sense be considered a delivery to Johnson. For, first, the defendant had ceased to be Johnson's servant—secondly, he took the brick on his own account, and put them to his own use ; and, thirdly, the contract between plaintiffs and Johnson was at an end. This was clearly a conversion of the property by defendant, as charged. The attempt to show that the property in the brick vested in Johnson, at the time defendant separated them from the kiln and took possession of them, wholly fails. This is in no sense analogous to the case of goods delivered to a carrier by direction of the consignee, where it is held he must bring the action. Nor is it the case of the abuse of a license in fact. It is an attempt to refer an act to one motive which proved to have been done for another,—to use a license to cover an act, clearly not within the license, and this after a revocation of the license and a rescinding of the contract.— This is clearly not allowable, and in no sense can the defendant claim this favor for the mere purpose of defeating this action, when

WINDHAM,
February,
1836.
Holland et al.
vs.
Osgood.

upon his own admission he is clearly liable to some one in trover for converting the property; and it is quite immaterial to him, except so far as costs are concerned. If it were admitted that the plaintiffs might have elected to treat this as a sale and delivery to Johnson by his servant the defendant, they clearly were not bound to treat it so, and might pursue defendant as they have.

Judgment of county court affirmed.